DeCARLO, Judge
(dissenting).
Under the facts and circumstances of this case, I would affirm this conviction.
I
The waiver of the presence of counsel by appellant was clear. An evidentiary hearing was held out of the jury’s presence to determine the voluntariness of the confession. At its conclusion, the trial judge *72 found the evidence sufficient to show that the admission in question was freely given by the appellant.
The record showed the appellant was arrested at approximately 5:30 P. M., on August 13, 1974, and was brought to jail. He was advised of his constitutional rights by Officer King, who read them to him from a “Miranda Card.”
On being informed of these rights, appellant asked to speak to his lawyer, George Cameron. At that point, the officers contacted Mr. Cameron.
Prom the record:
“Q. (By Mr. Thomas) Did he ask for a lawyer?
“A. The day this was signed and read or the day that we picked him up and it happened?
“Q. The day you picked him up and it happened?
“A. He did. He wanted to talk to a lawyer that day.
“Q. Now, did you all contact his lawyer?
“A. We did.
“Q. Who was that?
“A. Mr. George Cameron.
“Q. Did he talk with his lawyer?
“A. Let him talk to the lawyer, himself.
“Q. What, if anything, did he say after he got through talking with Mr. George Cameron?
“A. He said Mr. George Cameron—
“MR. FULLER: (Interrupting) Excuse me—
“MR. THOMAS: (Interrupting) This is what the defendant said.
“MR. PULLER: Oh; all right.
“Q. What did he say?
“A. The defendant said Mr. Cameron told him to tell the truth.
“Q. And told him to talk with you all?
“A. (Nods head affirmatively).”
Here this man was afforded the right to confer with his own counsel and only after he talked with his attorney was any interview conducted. As is shown from the record, the appellant acted on the advice of his counsel when he made the incriminating statement.
The statement made to the police was two pages in length and was signed at the bottom of each page by the appellant. Near the middle of the last page, the appellant initialled a correction. It was dated August 15, 1973, and indicated a time of 12:05 P. M.
In addition to the written confession, appellant also executed a written statement delineating his constitutional rights. Included in this statement of rights was the admonition concerning the right to confer with, presence of, and appointment of counsel.
Also, in the confession proper, at the very beginning, we find that appellant again was apprised of his right to counsel in this language:
“STATE’S EXHIBIT 5
“I, Willie James Wright, hereby make the following statement to Det. G. J. Vail-lancourt & Sgt. C. L. King who I know as police officers of the City of Montgomery. I have been advised of my rights and I know that I may have an attorney present if I wish and if I cannot afford to hire one the court will appoint one for me. I make this statement of my own free with (sic) and no threats or promises have been made to me. . . . ”
Prom the time of this man’s arrest until the time the statement was executed, approximately 43 hours elapsed. Nothing in the record indicates that the statement was the product of an uninterrupted period of continuous questioning. On the contrary, the record reflects the following in Officer King’s testimony:
“Q. . . . And how long did you observe him?
“A. I stayed with him approximately— well, near about two days.
“Q. Yes, sir. Now, during that time— “A. (Interrupting) Off and on, we took him—
“Q. (Interrupting) Sir?
*73 “A. Off and on for two days, we would take him out and when he got tired of talking, he didn’t want to talk to us, we would take him back.”
No evidence was presented that made it appear appellant was refused access to his family, friends or counsel, or that he had been physically abused and not given food or drink.
At no time after the initial “Miranda Warning” on August 13, 1974, and his telephone conversation with Cameron, did appellant ever request counsel. As can be seen from the foregoing, he was in fact, made aware of this right to presence of counsel at two other instances.
Miranda, supra, says a man has a right to confer with his attorney and have him present during questioning. It does not say that after he has talked to his attorney, he cannot then make a valid waiver of counsel.
The appellant at bar was not a first offender. He had been convicted and sentenced on two prior occasions for similar offenses. His only request was to speak to his attorney, which was granted, and not to have him present. In my judgment, a voluntary waiver of right to counsel was shown, and the confession was properly admitted.
II
I now turn to the point of error that the appellant was denied a public trial.
The record indicates that the court stated it would exercise its discretion to “clear the court.” Whether it was within the court’s discretion seems to be resolved by the apparent emasculation of the pertinent statute through the adoption of the Judicial Article, supra.
Even so, the mere statement that the courtroom was to be cleared, is not sufficient. In Washburn v. State, 42 Ala.App. 7, 150 So.2d 398, Judge Cates writing for this court, acknowledged there must be a “showing” that the public was excluded.
This is shown in the following language from Washburn, supra:
“ ‘. . . [I]t is said that to show that the judge below denied a public trial as demanded by Constitution 1901, § 6, there must be some ‘showing’ that ‘the public construed the language used by the trial judge as requiring them to leave or that the public did leave after the trial judge made his statement.’ ”
Without some indication that on-lookers did in fact leave after the judge’s announcement, it cannot be successfully contended that appellant was denied a public trial.
For the foregoing reasons, I respectfully dissent.